**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 19-20448

United States Court of Appeals
Fifth Circuit

**FILED**
July 15, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

  Plaintiff - Appellee

v.

ROBERT MONTGOMERY,

  Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, ELROD, and HIGGINSON, Circuit Judges.
STEPHEN A. HIGGINSON, Circuit Judge:

Robert Montgomery appeals his conviction for failure to register as a sex offender in violation of the Sex Offender Registration and Notification Act (SORNA), 18 U.S.C. § 2250(a). Because Montgomery should have been classified as a tier I offender under SORNA, meaning that he was not required to register in 2018, we vacate the conviction.

Robert Montgomery was convicted of sexual assault in the second degree in New Jersey state court on October 22, 1992. He was sentenced to eight years in prison and released on parole on March 21, 1995. Twenty-three years later, around April 2, 2018, Montgomery took up residence in Texas. Although

No. 19-20448

Montgomery had registered as a sex offender at previous addresses, he did not register as a sex offender at this residence.

On November 7, 2018, the government charged Montgomery in a one-count indictment with failure to register as a sex offender in violation of 18 U.S.C. § 2250(a). After a largely stipulated trial, the district court adjudged Montgomery guilty. In preparation for sentencing, the probation officer prepared a presentence investigation report (PSR) that recommended assigning Montgomery a base offense level of 16 as a tier III SORNA offender. Montgomery objected to the PSR, arguing that he should be classified as a tier I offender under SORNA because his New Jersey conviction for second degree sexual assault was not comparable to the federal SORNA definitions of sexual abuse and aggravated sexual abuse associated with tier III status. The court overruled the objection and sentenced Montgomery to 41 months in custody with five years of supervised release.

Montgomery timely appealed the judgment. He now argues that his New Jersey conviction for second degree sexual assault is a SORNA tier I offense, meaning that he was required to register for only 15 years after his release from custody in 1995 and had no obligation to register as a sex offender when he was charged with failing to do so in 2018.

Because Montgomery failed to present his sufficiency of the indictment argument in a motion to dismiss, and instead raised it for the first time in his objections to the PSR, our review is for plain error.[1] *United States v. Fuchs*,

---

[1]     Montgomery instead moved to dismiss because he argued that SORNA was unconstitutional as applied to him due to SORNA's provision authorizing the United States Attorney General to decide the applicability of the Act's registration requirements to offenders convicted before its enactment, which he argued violated the nondelegation doctrine.  This issue was pending at the time before the Supreme Court in *Gundy v. United States*, but the Supreme Court subsequently held that the provision did not violate the nondelegation doctrine. 139 S. Ct. 2116 (2019).

467 F.3d 889, 900 (5th Cir. 2006). To show plain error, Montgomery must demonstrate a clear or obvious error that has not been intentionally abandoned and has affected his substantial rights. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018). If he makes that showing, then the court should exercise its discretion to correct the error, if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 1905 (citation omitted).

SORNA, 34 U.S.C. §§ 20901–20962, is a federal law establishing "a comprehensive national system for the registration" of sex offenders. *Id.* § 20901. It requires qualifying offenders to register and update their registration upon a change in residence, with criminal penalties for knowingly failing to comply. *Id.* § 20913; 18 U.S.C. § 2250. SORNA classifies offenders into three tiers. 34 U.S.C. § 20911. A tier I offender must register for 15 years, a tier II offender must register for 25 years, and a tier III offender must register for life. *Id.* § 20915(a).

Our court and others determine an offender's SORNA tier by comparing the offense for which they were convicted with SORNA's tier definitions using the categorical approach. *See United States v. Escalante*, 933 F.3d 395, 398 (5th Cir. 2019). To apply the categorical approach, courts "'look only to the statutory definitions'—*i.e.*, the elements—of [an offense], and *not* 'to the particular facts underlying those convictions.'" *Descamps v. United States*, 570 U.S. 254, 261 (2013) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). If the offense "sweeps more broadly" than the SORNA tier definition, then the offense cannot qualify as a predicate offense for that SORNA tier regardless of the manner in which the defendant actually committed the crime. *Id.*; *United States v. Young*, 872 F.3d 742, 745 (5th Cir. 2017).

A defendant must show "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside

the generic definition of the crime." *United States v. Castillo-Rivera*, 853 F.3d 218, 222 (5th Cir. 2017) (quoting *Gonzales v. Duenas-Alvarez,* 549 U.S. 183, 193 (2007)). Merely pointing to plausible interpretations of the statutory text in a vacuum is not enough. *Id.* A defendant must point to case law from the relevant state courts actually applying the law in a manner that is broader than the federal definition. *Id.*

Thus, to be a tier III sex offender under SORNA, Montgomery's New Jersey conviction must be "comparable to or more severe than . . . aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18)."[2] 34 U.S.C. § 20911(4); *see also Young*, 872 F.3d at 745 (quoting *United States v. Coleman*, 681 F. App'x 413, 416–17 (5th Cir. 2017)). Because the New Jersey Supreme Court has interpreted the state crime of sexual assault in the second degree to cover conduct outside of the federal definitions given in 18 U.S.C. §§ 2241 and 2242, Montgomery does not qualify as a tier III offender.

Aggravated sexual abuse, as defined in § 2241, requires "knowingly caus[ing] another person to engage in a sexual act" using force or "by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping; or attempt[ing] to do so." 18 U.S.C. § 2241(a). We have held that the force element required under this definition is "restraint sufficient to prevent the victim from escaping." *United States v. Lucas*, 157 F.3d 998, 1002 (5th Cir. 1998); *see also United States v. Carey*, 589 F.3d 187, 195 (5th Cir. 2009). Conversely, the New Jersey Supreme Court has held that, although 1992 N.J. Stat. § 2C:14-2(c)(1) requires "physical force or coercion," a defendant may be convicted under the statute upon a showing of "any touching that occurs without permission." *State in the*

---

[2] New Jersey sexual assault does not involve kidnapping a minor or a crime that occurs after the offender becomes a tier II offender, which are the other definitions of a tier III offender. *See* 34 U.S.C. § 20911(4).

*Interest of M.T.S.*, 129 N.J. 422, 446 (1992); *see also Jecrois v. Sojak*, 736 F. App'x 343, 347 (3d Cir. 2018) ("Under New Jersey law, 'physical force in excess of that inherent in the act of sexual penetration is not required for such penetration to be unlawful' . . . [r]ather, the act of penetration itself, if 'engaged in by the defendant without the affirmative and freely-given permission of the victim to the specific act of penetration,' satisfies the physical force or coercion element of sexual assault." (quoting *State in the Interest of M.T.S.*, 129 N.J. at 444)); *United States v. Johnson*, 743 F.3d 196, 201 (7th Cir. 2014) (noting that New Jersey has taken the position that "'force" was present . . . because some force was inherently needed to perform the sexual act"). Indeed, the defendant in *State in the Interest of M.T.S.* was convicted upon a showing of nonconsensual conduct without an additional showing of force. 129 N.J. at 449–50. Therefore, New Jersey courts have, in practice, applied 1992 N.J. Stat. § 2C:14-2(c)(1) to conduct that falls outside of the SORNA definition of aggravated sexual abuse.

Similarly, a person commits sexual abuse under 18 U.S.C. § 2242 when he knowingly "causes another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping)" or engaging in a sexual act with someone who is mentally or physically incompetent. 18 U.S.C. § 2242. Federal courts interpret this threat or fear language to require more than merely a lack of consent. *See, e.g., United States v. Cabrera-Gutierrez*, 756 F.3d 1125, 1133–34 (9th Cir. 2014) (holding that an Oregon sexual abuse statute penalizing penetration with a lack of consent was broader than § 2242); *United States v. Iu*, 917 F.3d 1026, 1031 (8th Cir. 2019) (pointing to behavior "aimed at frightening [the victim] to the point that she acquiesced to sexual activity with him" to satisfy the fear requirement of § 2242); *United States v. Betone*, 636 F.3d 384, 388 (8th Cir.

No. 19-20448

2011) (relying on statements such as "[y]ou don't want to do that, because it's the worst thing you can do for yourself right here and right now," and the victim's testimony that he was afraid to resist or leave to establish fear). Courts also distinguish § 2242's threats and fear from § 2241's force element. *United States v. Boyles*, 57 F.3d 535, 544 (7th Cir. 1995) ("'Fear' and 'threats' are different from 'force.'"). These interpretations render New Jersey sexual assault, which criminalizes non-consensual intercourse in the absence of threats or fear, broader than the federal definition given in 18 U.S.C. § 2242 as well.

Because Montgomery does not meet the definition of a tier III offender, he must be classified as a tier I offender.[3] 34 U.S.C. § 20911(2). As a tier I offender, he was required to register for only 15 years after his release in 1995. § 20915(a). Because this error is clear under current law and resulted in Montgomery serving additional time in prison, Montgomery has shown plain error. *Rosales-Mirales*, 138 S. Ct. at 1905–08. Accordingly, Montgomery's conviction for failure to register as a sex offender is VACATED.

---

[3] The government dissent does not argue that Montgomery meets the definition of a tier II sex offender, and the crimes described in that section are inapplicable to Montgomery's conviction. *See* 34 U.S.C. § 20911(3).

No. 19-20448

JENNIFER WALKER ELROD, Circuit Judge, joined by JONES and HIGGINSON, Circuit Judges, concurring:

I fully concur in the panel opinion. "This outcome is required by faithful adherence to precedent." *United States v. Escalante*, 933 F.3d 395, 406 (5th Cir. 2019). However, I write separately because this case illustrates yet another troubling application of the expanded and "byzantine-like" categorical approach. *Id.* "[A]dherence to the categorical approach leads to a result in this case that is almost certainly contrary to any plain reading of the statute." *Id.*

Here, Mr. Montgomery was convicted of sexual assault in the second degree in 1992. The 1992 New Jersey statute defining sexual assault in the second degree provides that, "[a]n actor is guilty of sexual assault if he commits an act of sexual penetration with another person under any one of the following circumstances . . . [including, as relevant here,] [t]he actor uses physical force or coercion, but the victim does not sustain severe personal injury." N.J. Stat. § 2C:14-2(c)(1) (1992). Mr. Montgomery's crime involved threatening an adult woman with a box cutter while he fondled her and put his fingers and mouth on her vagina.

Despite the specific acts of Mr. Montgomery's underlying conviction squarely fitting SORNA's Tier III definition, we are compelled by the categorical approach to instead look only to the elements of the crime enumerated by the New Jersey statute: (1) an act of sexual penetration; (2) using force or coercion. *See State v. R.P.*, 126 A.3d 1226, 1230 (N.J. 2015). In doing so, Mr. Montgomery cannot be classified as a Tier III offender; he must be classified as a Tier I offender and relieved of his obligation to register as a sex offender under SORNA. This does not comport with the statute's text.

Skepticism of the categorical approach is not new, but time has magnified the unworkability of this approach. *Quarles v. United States*, 139 S. Ct. 1872, 1881 (2019) (Thomas, J., concurring) (suggesting that the Supreme

No. 19-20448

Court reconsider this approach and noting that "the categorical approach employed today is difficult to apply and can yield dramatically different sentences depending on where a [crime] occurred"); *Sessions v. Dimaya*, 138 S. Ct. 1204, 1252 (2018) (Thomas, J., dissenting); *Mathis v. United States*, 136 S. Ct. 2243, 2259 (2016) (Thomas, J., concurring).[1]

"In the nearly three decades since its inception, the categorical approach has developed a reputation for crushing common sense in any area of the law in which its tentacles find an inroad." *Escalante*, 933 F.3d at 406. "Perhaps one day the Supreme Court will consider revisiting the categorical approach and setting the federal judiciary down a doctrinal path that is easier to navigate and more likely to arrive at the jurisprudential destinations that a plain reading of our criminal statutes would suggest." *Id.* at 407.

---

[1] *See also, e.g.*, *United States v. Lewis*, 720 F. App'x 111, 120 (3d Cir. 2018) (Roth, J., concurring in the judgment) (describing the categorical approach as "willful blindness— which may allow violent offenders to evade accountability"); *United States v. Davis*, 875 F.3d 592, 595 (11th Cir. 2017) (observing that the categorical approach carries judges "down the rabbit hole . . . to a realm where we must close our eyes as judges . . . . It is a pretend place in which a crime that the defendant committed violently is transformed into a non-violent one . . . . Curiouser and curiouser it has all become[.]"); *United States v. Chapman*, 866 F.3d 129, 136–38 (3d Cir. 2017) (Jordan, J., concurring) (expressing dismay at the "kudzu quality of the categorical approach, which seems to be always enlarging its territory[,]" and which "often asks judges to feign amnesia," and to "ignore facts already known and instead proceed with eyes shut"); *United States v. Faust*, 853 F.3d 39, 61 (1st Cir. 2017) (Lynch, J., concurring) (observing that the categorical approach "can lead courts to reach counterintuitive results, and ones which are not what Congress intended"); *United States v. Doctor*, 842 F.3d 306, 313– 15 (4th Cir. 2016) (Wilkinson, J., concurring) (stating that the categorical approach has caused judges to "swap[] factual inquiries for an endless gauntlet of abstract legal questions[,]" and recommending that the categorical approach should "loosen[] its present rigid grip upon criminal sentencing").