NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAY 16 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-10316 |
| Plaintiff-Appellee, | D.C. No. 4:20-cr-01859-JGZ-JR-1 |
| v. | |
| SHAWN CHRISTOPHER LYTE, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Jennifer G. Zipps, District Judge, Presiding

Argued and Submitted April 18, 2023
Phoenix, Arizona

Before: OWENS and BADE, Circuit Judges, and BAKER,** International Trade
Judge. Concurrence by Judge BAKER.

Shawn Christopher Lyte ("Lyte") appeals his conviction for failing to keep

his registration current as required by the Sex Offender Registration and

Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250(a).  We have

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\**      The Honorable M. Miller Baker, Judge for the United States Court of
International Trade, sitting by designation.

jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review evidence supporting a conviction "in the light most favorable to the prosecution" and will sustain the verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Tuan Ngoc Luong*, 965 F.3d 973, 980–81 (9th Cir. 2020) (citations omitted). The district court's findings on SORNA's constitutionality are reviewed de novo. *See United States v. Bynum*, 327 F.3d 986, 990 (9th Cir. 2003).

1.      Given our considerable deference to the verdict, we conclude there is sufficient evidence to support Lyte's conviction. As the parties acknowledge, Lyte stipulated to the first two elements of his SORNA conviction. Lyte's conviction thus turns on whether he "knowingly fail[ed] to register or update a registration as required by" SORNA. 18 U.S.C. § 2250(a)(3). The evidence is undisputed that Lyte was homeless when he resided in Michigan—a fact Lyte concedes before us—and therefore under SORNA's governing regulations he was required to register in every place where he "habitually live[d]," which is any jurisdiction in which he "actually" lived "with some regularity." The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38030, 38061–62 (July 2, 2008). And there is sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that Lyte habitually lived in the states where he was sent to work: he very rarely returned to his listed residence, he lived and worked in the various

2

job sites for up to months at a time, and Lyte conceded he essentially lived on the road.

2.     Lyte's remaining challenges are without merit.  First, he challenges SORNA's constitutionality under the Tenth Amendment, contending that SORNA is an attempt by the federal government to improperly commandeer state resources into implementing a federal enforcement scheme.  But the Ninth Circuit has already "join[ed] every other court of appeals that has considered the question" and concluded "that SORNA does not violate the Tenth Amendment's anti-commandeering principle" because it "does not compel states or state officials to comply with its requirements," instead relying on Congress's spending power. *United States v. Richardson*, 754 F.3d 1143, 1146 (9th Cir. 2014) (per curiam).

3.     Next, Lyte contends his conviction is void for vagueness under the Fifth Amendment.  Lyte raises two arguments in support of this contention.

First, Lyte contends that he believed he was habitually living in Michigan because that is where he "had the most contacts and returned to between jobs." But under SORNA, a sex offender habitually lives anywhere he "lives with some regularity," 73 Fed. Reg. at 38062.  Therefore, whether Lyte "had the most contacts" or "returned to" Michigan between jobs is irrelevant to whether Lyte was required to update his registration information under SORNA.

Second, Lyte apparently contends that because federal requirements under

3

SORNA are more rigorous than state law analogues, Lyte could not have been on notice that his conduct was prohibited by SORNA. But Lyte does not explain why more permissive state law regimes impacted his ability to read SORNA's plain text, which requires sex offenders to update their residency information within three business days of a change of that residence. 34 U.S.C. § 20913(c). And to the extent Lyte argues that the application of SORNA to his circumstances is unconstitutionally vague because he relied on guidance he received from state officials, that argument fails because by the time Lyte had received that guidance he was already in violation of SORNA.

**AFFIRMED.**

FILED

MAY 16 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BAKER, Judge, concurring:

Shawn Lyte, a convicted sex offender as defined in SORNA, is a homeless man who worked for a Michigan employer installing shelving in locations across the United States. As the majority notes, he lived on the road except between jobs when he was called back to Michigan, where he registered as a sex offender. After he traveled to Arizona for work, the federal government charged him under 18 U.S.C. § 2250(a)[1] with "knowingly fail[ing] to register and update a registration as required by [SORNA] after relocating and traveling in interstate commerce from Michigan to Arizona."

SORNA requires that "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender *resides*, where the offender is an employee, and where the offender is a student." 34 U.S.C. § 20913(a) (emphasis added). To "keep the registration current" means that "[a] sex offender shall, not later than 3 business days after each *change of* name, *residence*, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry." *Id.* § 20913(c) (emphasis added). The

---

[1] As relevant here, the statute provides that a convicted sex offender such as Lyte who "knowingly fails to register or update a registration as required by [SORNA] shall be fined under this title or imprisoned not more than 10 years, or both." 18 U.S.C. § 2250(a)(3).

term "resides" (and, by derivation, "residence") "means, with respect to an individual, the location of the individual's home or other place where the individual habitually lives." *Id.* § 20911(13).

Here, the district court found that Lyte changed his residence to Arizona and failed to register there within three days as SORNA requires. Thus, I turn to an examination of what it means to change one's residence under SORNA.

The majority correctly notes that "under SORNA's governing regulations [Lyte] was required to register in every place where he 'habitually live[d]." Disposition at 2 (brackets in original) (quoting *Office of the Attorney General; The National Guidelines for Sex Offender Registration and Notification*, 73 Fed. Reg. 38,030, 38,055, 38,062 (Dep't Justice July 2, 2008) (Guidelines)).

The difficulty lies in the statutory phrase "habitually lives," as the Guidelines admit that it "*is not self-explanatory and requires further definition.*" *Id.* at 38,061 (emphasis added). To that end, the regulation states that "habitually lived" should "include places in which the sex offender lives with some regularity, and with reference to where the sex offender actually lives, not just in terms of what he would choose to characterize as his home address or place of residence for self-interested reasons." *Id.* at 38,062.

The majority and the district court end the analysis with the phrase "lives with some regularity," Disposition at 2, but they do not explain what standard they apply

2

to determine what that phrase—which, in my view, is just as vague as "habitually lives"—means in practice. The Guidelines, however, give courts, prosecutors, and convicted sex offenders like Lyte precise direction:

> The specific interpretation of this element of "residence" these Guidelines adopt is that a sex offender habitually lives in the relevant sense in any place in which the sex offender *lives for at least 30 days*. Hence, a sex offender resides in a jurisdiction for purposes of SORNA if the sex offender has a home in the jurisdiction, or if the sex offender *lives in the jurisdiction for at least 30 days*.

73 Fed. Reg. at 38,062 (emphasis added).[2]

Lyte did not argue below that the Guidelines' 30-day standard governs the meaning of "residence" for SORNA purposes. On appeal, he cites that standard, but at best argues for its application only by implication—he inexplicably failed to connect the dots. I therefore assume that his presentation of the applicable 30-day standard is inadequate under our normal standards.

Nevertheless, in criminal cases we may notice plain error not properly presented either below *or* on appeal. *See* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered *even though it was not brought to the court's attention*.") (emphasis added). Rule 52(b) by its terms is thus an exception to the party-presentation rule. *See* 3B Wright & Miller, *Federal Practice &*

---

[2] The Guidelines further make clear that the obligation to register within three business days is triggered not when 30 days is reached, but when a convicted sex offender enters a jurisdiction "*to make his home or habitually live in the jurisdiction*," *id*., i.e., with the intent to live there for at least 30 days, *id*.

*Procedure—Criminal* § 856 (4th ed. Apr. 2023 update) (under Rule 52(b), the "appellate court may take notice of an error on its own motion though it is never put forward by counsel"); *see also United States v. Nitzkin*, 37 F.4th 1290, 1293 (7th Cir. 2022) (Easterbrook, J.) ("A court of appeals may notice plain error . . . ."). Lyte's failure to properly present the Guidelines' 30-day standard therefore does not prevent us from applying plain error review.

There are three threshold requirements for such review: (1) an error must exist (2) that is clear or obvious and (3) that affects "substantial rights." *Greer v. United States*, 141 S. Ct. 2090, 2096 (2021). This "generally means that there must be 'a reasonable probability that, but for the error, the outcome of the proceeding would have been different.' " *Id.* (quoting *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018)). "If those three requirements are met, an appellate court may grant relief if it concludes that the error had a serious effect on 'the fairness, integrity or public reputation of judicial proceedings.' " *Id.* at 2096–97 (quoting *Rosales-Mireles*, 138 S. Ct. at 1905).

The district court's failure to apply the Guidelines' 30-day standard is plain error on its face. *See United States v. Alexander*, 817 F.3d 1205, 1214 (10th Cir. 2016) (reversing a SORNA conviction because the jury instruction's omission of "any reference to the thirty-day standard" "could lead a jury to find even in the

absence of intent that some lesser period is sufficient to satisfy the 'habitually lives' standard").

In my view, the district court's error affected Lyte's substantial rights at least as to the basis for the district court's decision, i.e., that he changed his "residence" for SORNA purposes. The record shows that in the aggregate, he spent only 18 days in Arizona,[3] and he was arrested the day before his expected departure for work in Minnesota. Nothing in the record shows that he intended or should have expected to spend at least 30 days in Arizona. In the absence of such evidence, I believe that there exists not only a reasonable probability, but a likelihood that the district court would have acquitted him as to the government's "residence" theory had the court applied the correct legal standard.[4]

Nevertheless, the government argues that we can affirm on the alternative ground that the record establishes that Lyte "[wa]s an employee" during the 18 days he worked in Arizona. The Guidelines support this interpretation by requiring "that information be obtained and included in the registry concerning the places where such a sex offender works with whatever definiteness is possible under the

---

[3] The defendant in *Alexander* whose SORNA conviction the Tenth Circuit reversed spent 18 days in the jurisdiction in question. *See id.*

[4] Lyte further confused matters by erroneously arguing that his compliance with Arizona law shielded him from SORNA liability. *Cf. United States v. Navarro*, 54 F.4th 268, 274 (5th Cir. 2022) ("[W]hether an individual complies with state law has no bearing on whether he has discharged his SORNA obligations.").

circumstances, such as information about normal travel routes or the general area(s) in which the sex offender works." *See* 73 Fed. Reg. at 38,056 (discussing sex offenders who "may not have a fixed place of employment").

Unlike as to "residence," the Guidelines impose no clear standard as to how long a sex offender must work as "an employee" in a jurisdiction to trigger SORNA's registration requirement.[5] In the absence of any such discernable standard, it's impossible on this record to say that Lyte was *not* "an employee" in Arizona for SORNA purposes during his 18-day sojourn there. In his reply brief, Lyte offers no response to the government's argument for affirmance on this alternative ground. Because we can affirm on that basis, the district court's error in applying the wrong legal standard for "residence" did not have "a serious effect on

---

[5] The Guidelines indicate that a sex offender who "regularly . . . works in [multiple] jurisdictions" is expected to register in those jurisdictions, but also acknowledge that SORNA does not require registration for a "transient employment-related presence" such as a "long haul trucker [who] regularly drives through dozens of jurisdictions in the course of his employment." *Id*. at 38,062. The Guidelines further leave "line drawing" to the states for sex offenders who have "some employment-related presence in a jurisdiction" but who do "not have a fixed place of employment or regularly work within the jurisdiction." *Id*. Because compliance with state law is irrelevant to a sex offender's federal obligations, the Guidelines' failure to draw any such line for federal law purposes raises troubling vagueness questions when, as here, the government argues that a sex offender with no fixed place of employment violated SORNA by not registering in a state where the offender worked for a short period of time. Nevertheless, because Lyte neglected to respond to the government's alternative ground for sustaining the judgment below, those questions are not properly presented here.

the fairness, integrity or public reputation of judicial proceedings." *Greer*, 141 S. Ct. at 2096–97 (cleaned up). I therefore concur in affirming the district court.[6]

---

[6] I agree with the majority that circuit precedent forecloses Lyte's Tenth Amendment challenge. As to his vagueness challenge to the government's "change of residence" theory that the district court adopted, Lyte argues that state and federal law enforcement authorities gave him conflicting directions, but in so doing he ignores that his obligations under federal and state law are distinct. Moreover, any such misdirection that he received is irrelevant to his ability to understand his federal obligations spelled out in SORNA and the Guidelines. Relatedly, his vagueness challenge fails for the additional reason that the Guidelines' 30-day standard cures any problem in the statute's otherwise opaque definition of "residence." And insofar as he argues that Arizona officials did not permit to him to register, he failed to invoke the affirmative defense that "uncontrollable circumstances prevented" his registration. *See* 18 U.S.C. § 2250(c).