UNITED STATES of America,
Plaintiff–Appellee

v.

Keilon Vidal SANDERS, also known
as Bird, Defendant–Appellant

No. 15-10321

United States Court of Appeals,
Fifth Circuit.

Filed December 15, 2016

Suzanna Odette Etessam, James Wesley Hendrix, Assistant U.S. Attorneys, U.S. Attorney's Office, Northern District of Texas, Dallas, TX, for Plaintiff-Appellee.

Keilon Vidal Sanders, Pro Se.

Before ELROD, SOUTHWICK, and GRAVES, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Keilon Vidal Sanders was sentenced to 120 months imprisonment after he pled guilty to one count of conspiracy involving 1,000 kilograms or more of marijuana. Sanders now argues that his guilty plea was entered involuntarily and that the district court violated his right to self-representation. We AFFIRM as to the voluntariness of the plea but VACATE Sanders's sentence and REMAND for re-sentencing because the district court failed to honor his request for self-representation.

## FACTUAL AND PROCEDURAL BACKGROUND

Sanders was charged in an eleven-count indictment with involvement in a narcotics conspiracy with nineteen other defendants. He was initially represented by court-appointed counsel, Michael Ray Harris, but soon moved to dismiss his attorney. Sand-

ers claimed Harris had little experience in federal court and had become angry when Sanders was unwilling to sign a plea agreement. At no point in his first motion did Sanders ask to represent himself. Instead, he asked the court to appoint new counsel.

The district court granted Harris's motion to withdraw as counsel and substituted Brook Busbee. Shortly thereafter, Sanders pled guilty to the first count of the indictment. Before accepting the plea, the court asked Sanders whether he understood the charges against him. He responded affirmatively and waived a reading of the indictment. Even so, the court required the prosecutor to explain the elements of the offense with which Sanders was charged. After she did so, Sanders agreed he committed the essential elements. Sanders also told the court that he had gone over the plea agreement in "great detail" with his attorney and was satisfied with her representation. Later in the colloquy, the court inquired specifically as to voluntariness, and Sanders reported he had not been threatened or forced into pleading guilty. Further, no one promised him anything in exchange for his plea.

The following month, Sanders sent a letter to the court seeking to rescind his guilty plea on the basis that Busbee had been working with the Government and not on his behalf. The court struck his correspondence from the record because he had an attorney who alone could make filings on his behalf. The court directed Sanders to convey his concerns to his appointed attorney. The court noted that Sanders was not entitled to "hybrid representation"—representation "partly by counsel and partly by himself." In response, Sanders filed a document asserting he should have control over his own defense and renewed his motion to withdraw his guilty plea. Again, the court struck the pleadings from the record. At no point

during this correspondence did Sanders explicitly request to represent himself.

Two weeks later, Sanders moved to dismiss Busbee as his attorney. His motion did not explicitly reference his right to self-representation but cited *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), to support his right to waive the assistance of counsel. The court did not rule on his motion until roughly eight months later, when it removed Busbee as counsel and substituted Jeffrey A. Ansley. In the interim, Sanders argues, the judge "got very upset" after he requested permission to proceed pro se during a status conference. Sanders's handwritten account reveals he sought to remove his attorney and requested being allowed to choose between having counsel and proceeding pro se.

After Ansley's appointment, Sanders filed a "Petition to Represent Self Under the Sixth Amendment of the Constitution [of] the United States of America." The Government characterizes this correspondence as part of Sanders's "slew of indecipherable pro se pleadings." Perhaps, but the motion clearly expresses Sanders's desire to "exercise his right to defend himself." As a result, Ansley filed multiple motions to withdraw as counsel, confirming Sanders's desire to proceed pro se. The court did not formally grant Ansley's request until after Sanders's sentencing hearing.

Ansley was present with Sanders at that hearing. Initially, the court warned Sanders of the dangers of self-representation: the judge analogized Sanders's request to "cutting [himself] open and taking [his own appendix] out." The court encouraged Sanders again to speak with his attorney, after which Ansley reiterated Sanders's desire to proceed without assistance. The court then denied Ansley's request to withdraw but agreed to allow Sanders to speak

on his own behalf with Ansley acting as standby counsel. The court later noted that if counsel had objections to its ruling, Ansley and the Government could "take [them] to the Fifth Circuit."

At the hearing, the presentence report (PSR) became an issue. It assigned a base offense level of 32, a two-level increase for possessing a dangerous weapon, a three-level increase for having a managerial role, and a three-level decrease for his acceptance of responsibility. The court asked Sanders to argue his previous attorney's objections to the PSR. Sanders explained he had not received a copy of those objections and had received the PSR only two days before the hearing. After a somewhat sharply worded exchange between Sanders and the court, Sanders informed the court he needed more time to read the PSR and develop his own objections. The court apparently believed Sanders was attempting to delay the proceedings, so it required Sanders to consult with Ansley before proceeding any further.

Finally, the court discussed the guidelines calculation. Before closing argument, the Government stated it was not opposed to removing the two-level enhancement for possession of a firearm. Following that reduction, Sanders's guidelines range was 121 to 151 months with a 120-month mandatory minimum. The court adopted the mandatory minimum sentence and imposed a five-year term of supervised release. Before the hearing formally concluded, the judge stated, "I want the record to reflect I did grant the motion to withdraw filed by Mr. Ansley, and he was the standby lawyer today." Sanders timely filed his notice of appeal.

## DISCUSSION

Sanders now alleges four errors. First, he argues the district court lacked subject matter jurisdiction. Second, he claims the district court erred by accepting his guilty plea, which, he argues, was entered involuntarily. Third, he argues the district court violated his right to self-representation by forcing him to accept Ansley's counsel. Finally, Sanders asserts he did not receive a copy of his PSR at least 35 days before the sentencing hearing, which prevented him from preparing for sentencing and, thus, deprived him of the opportunity to defend himself. *See* FED. R. CRIM. P. 32(e)(2).

### I. Subject Matter Jurisdiction

■ Sanders challenges the district court's subject matter jurisdiction. A criminal case is properly before the district court if the indictment charges the defendant "with an offense against the United States in language similar to that used by the relevant statute." *United States v. Scruggs*, 714 F.3d 258, 262 (5th Cir. 2013) (quotation marks omitted). This indictment so charged Sanders, so the district court had subject matter jurisdiction.

### II. Coerced Guilty Plea

■ Sanders argues that his guilty plea was "made under duress and coercion," thereby invalidating the plea and the plea agreement. The Government contends that review is for plain error because Sanders did not object to the sufficiency of the plea colloquy. On the other hand, review is for harmless error "[w]hen a defendant objects at the district court level to the court's failure to comply with Rule 11 during the plea colloquy." *United States v. Powell*, 354 F.3d 362, 367 (5th Cir. 2003). Sanders repeatedly filed motions to withdraw his guilty plea at the district court level. The difficulty with deciding the effectiveness of these motions in preserving error is that Sanders filed each motion while he was represented by counsel. As a result, the court struck some of Sanders's personal filings from the record. The district court was certainly correct that Sand-

ers was not entitled to representation by himself and by appointed counsel. *United States v. Daniels*, 572 F.2d 535, 540 (5th Cir. 1978). We conclude that there was no properly filed motion preserving the issue of the validity of the plea.

■ We thus engage in plain-error review. Sanders must show an obvious error that affects his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009). There must be "a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). The court may then, in its discretion, correct the error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 556 U.S. at 135, 129 S.Ct. 1423 (quotation marks omitted).

■ Sanders argues that he understood neither "the nature of the charges against him nor the consequences of his plea." Sanders also argues the prosecutor effectively coerced him into pleading guilty by threatening to withhold her substantial-assistance motion.

Federal Rule of Criminal Procedure 11(b)(2) provides: "Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." The district court satisfied these obligations. The record as a whole indicates Sanders was neither threatened nor forced into pleading guilty. Sanders has not demonstrated the district court plainly erred when it accepted his guilty plea. *See Puckett*, 556 U.S. at 135, 129 S.Ct. 1423.

## III.  Denial of Right to Self-Representation

Finally, Sanders argues the district court deprived him of the opportunity to defend himself by never granting his multiple motions for self-representation.

■■ Challenges that a constitutional right to self-representation was denied are reviewed *de novo*. *United States v. Jones*, 421 F.3d 359, 363 (5th Cir. 2005). Of importance on this appeal, the "impermissible denial of self-representation cannot be harmless" and requires automatic reversal. *United States v. Cano*, 519 F.3d 512, 516 (5th Cir. 2008) (quotation marks omitted).

■ Defendants have a constitutional right to represent themselves in federal court. *Faretta*, 422 U.S. at 815–21, 95 S.Ct. 2525. A defendant's request to proceed pro se must be clear and unequivocal, and the record must show that he "knowingly and intelligently" waived the right to counsel. *Id.* at 835, 95 S.Ct. 2525. Once a clear, unequivocal, knowing, and intelligent invocation has been made, the court cannot force a defendant to accept the assistance of counsel. *Id.* at 835–36, 95 S.Ct. 2525. Even so, the right to self-representation is limited by the trial court's responsibility to prevent delay and other obstructionist behavior. *United States v. Long*, 597 F.3d 720, 726 (5th Cir. 2010) (citation omitted).

■ Sanders contends he made multiple motions to represent himself at the sentencing hearing. The Government contends Sanders did not unequivocally voice his request until the hearing itself. We agree that several of the initial motions were equivocal. It was not until March 2015, ten months after getting his third attorney and a month before his sentencing hearing, that Sanders made it clear that he wished to represent himself. At that time, he filed a "Petition to Represent Self Under the Sixth Amendment of the

Constitution [of] the United States of America." In this petition, Sanders expressed his "desire and wish to exercise his right to defend himself."

No ruling on Sanders's motion was made before the sentencing hearing. Ansley was present at sentencing, but Sanders reiterated that he "didn't ask for Mr. Ansley." The court insisted Sanders "communicate with him and be cooperative with him." Sanders consulted with Ansley, and Ansley again reported Sanders's desire to proceed pro se. After filing a pre-hearing written motion and without any wavering after being questioned at the hearing, Sanders was entitled to represent himself. The court, though, denied the request by saying it would not "let [Ansley] withdraw." The court permitted Sanders to speak for himself but referred to Ansley as his "standby lawyer" throughout the hearing. At the end of the hearing, the court characterized its actions as having allowed the attorney to withdraw but requiring that he participate as a standby lawyer. The record does not support such a characterization. At all times, except perhaps at the very end of sentencing, the district court required Sanders to act through Ansley.

 We conclude by addressing the district court's perception that Sanders's desire to represent himself was simply an effort to delay the proceedings. Had that been so, the court may not have erred. *See Long,* 597 F.3d at 729. Nothing, though, supports that Sanders was simply seeking to delay. He requested permission to proceed without counsel nearly one month before the sentencing hearing, and he never requested a delay or continuance of the proceedings themselves. The court's frustration with Sanders is understandable. It had appointed three different attorneys for him. But the good efforts of the district court cannot override what has to be labeled *Faretta* error, meaning that the court failed to honor a clear request for

self-representation. *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525. That request was made well in advance of the hearing. We therefore conclude that self-representation did not occur for most of the hearing.

Because we hold that the district court violated Sanders's right to self-representation by forcing him to accept Ansley's counsel, we need not reach the issue of whether Sanders's right to self-representation was implicated when he did not receive his PSR in a timely manner.

\* \* \*

We AFFIRM the judgment of conviction based on Sanders's guilty plea. The sentence is VACATED and the matter REMANDED for resentencing.