# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 14, 2023

Lyle W. Cayce
Clerk

————————

No. 22-40508

————————

United States of America,

*Plaintiff—Appellee,*

*versus*

Darrell Lenard Bates,

*Defendant—Appellant.*

—————————————————————————

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:20-CR-58-1

—————————————————————————

Before Richman, *Chief Judge*, and Southwick and Oldham, *Circuit Judges*.

Per Curiam:[*]

The defendant pled guilty to failing to register as a sex offender. On appeal, he argues the conviction should be vacated because the factual basis to support his guilty plea was insufficient. We conclude there was no reversible error and AFFIRM.

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-40508

## FACTUAL AND PROCEDURAL HISTORY

In 1989, Darrell Lenard Bates was convicted in a Texas state court for sexual assault and aggravated sexual assault of a child under 14 years of age that occurred in 1988. In the current prosecution, the United States charged Bates with failing to register as a sex offender "in or about January 2020." His last time to register as a sex offender was in Louisiana in 2009. He moved back to Texas at some point and had been living in that state since at least early 2020.

On September 1, 2021, Bates pled guilty before a magistrate judge. That judge issued a report and recommendation that the plea be accepted, and the district court did so two days later. In December 2021, before his sentencing, Bates filed a *pro se* motion to quash the indictment. His arguments included that he was innocent and should not have pled guilty because he was not obligated to register as a sex offender at the time of his arrest. By text order, the magistrate judge dismissed the motion as moot because he was represented by counsel. Bates then filed an interlocutory appeal to this court. We dismissed the appeal for lack of jurisdiction over a magistrate judge order. *United States v. Bates*, 22-40053, 2022 WL 2116004, at *1 (5th Cir. June 13, 2022). We instructed Bates to file an objection with the district court instead. *Id.* Bates never did.

In July 2022, the day before his sentencing hearing, Bates filed a *pro se* motion entitled "Motion of His Actual Innocence of being required to Register as a sex offender, withdrawal of plea, plea ANEW, Ready for Trial." During the hearing, counsel for Bates effectively withdrew that motion and said Bates was ready for his sentencing. The district court accepted the guilty plea and sentenced Bates to 30 months in prison. Bates filed a timely *pro se* notice of appeal. The motion to withdraw by Bates's standby trial counsel was granted. New counsel was appointed to represent Bates on appeal.

2

No. 22-40508

## DISCUSSION

### I.     *Plain error review*

Bates argues his guilty plea was factually insufficient. "Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." FED. R. CRIM. PROC. 11(b)(3). "This court reviews guilty pleas for compliance with Rule 11, usually under the clearly erroneous standard." *United States v. Escajeda*, 8 F.4th 423, 426 (5th Cir. 2021). Even so, when there was no objection in the district court regarding the sufficiency of the factual basis for the plea, and the objection is made for the first time on appeal, "our review is restricted to plain error." *Id.* We have not forgotten the two *pro se* objections. Neither was sufficient, as we explain.

Although Bates's plea agreement waived his right to appeal his conviction, the Government has not invoked the waiver. Doing so would have been unavailing — a defendant may challenge the factual basis for his plea regardless of an appeal waiver. *United States v. Ortiz*, 927 F.3d 868, 873 (5th Cir. 2019). That is exactly what Bates challenges.

Bates's first objection was in December 2021, three months after the district court accepted his plea. At that time, Bates filed a *pro se* motion to quash the indictment. The motion was dismissed by the magistrate judge because he was represented by counsel. We dismissed the appeal from the magistrate judge's order, and Bates did not take our direction to file an objection with the district court. That motion did not preserve any issue for appeal now; "if a party did not object to a Magistrate Judge's Report and Recommendation, that party may not attack the proposed factual findings or legal conclusions except upon the grounds of plain error." *Starns v. Andrews*, 524 F.3d 612, 617 (5th Cir. 2008).

The second *pro se* objection was filed in July 2022, prior to sentencing, when Bates filed a motion asserting actual innocence. That motion did not preserve the issue, either, for three reasons. First, Bates "was not entitled to representation by himself and by appointed counsel" simultaneously. *See United States v. Sanders*, 843 F.3d 1050, 1053–54 (5th Cir. 2016). Because Bates was represented by counsel when he filed his *pro se* pleadings, his *pro se* briefing did not preserve any issue for review. *See id.* Second, to the extent the *pro se* briefing could preserve an issue for review, none of Bates's *pro se* pleadings specifically raised the legal issue he now asserts. Third, counsel stated at the sentencing hearing that Bates's second motion was not properly filed, or, alternatively, that it was not being pursued.

Thus, "plain error" review is the appropriate standard. To show plain error, an appellant must establish: (1) there was an error or defect that the defendant has not affirmatively waived; (2) the error was clear or obvious; (3) the error affected the defendant's substantial rights; and (4) the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quotation marks and citations omitted).

## II.     *Meaning of "factual basis"*

The parties agree that the questions presented on plain error review concern the "factual basis" for Bates's guilty plea. Bates had failed to register under the Sex Offender Registration and Notification Act ("SORNA"), 34 U.S.C. § 20901 *et seq.* Compressing his arguments for purposes of this initial discussion, he argues that (1) his failure to register as a sex offender was not knowing; (2) he had no obligation to register under SORNA because he was convicted under a Texas sex-crime statute, and Texas law did not require him to register; and (3) any obligation to register under SORNA had expired because of the elements of his prior offense.

No. 22-40508

One issue — not raised by any party but which begins our discussion — is whether all three of those arguments relate to the factual basis. Certainly, Bates's actual knowledge of a duty is an issue of fact. The other questions — what the Texas and federal statutes require — could be categorized as legal questions. In light of his appeal waiver, Bates is entitled to challenge only the factual basis for his plea, not other alleged defects.

The government accepts that all three issues relate to the factual basis. A quite similar argument regarding the factual basis for a plea for failure to register as a sex offender under SORNA was rejected in a recent precedent, and there, the Government's brief also implicitly conceded that all three issues were encompassed within the "factual basis" term. *See United States v. Navarro*, 54 F.4th 268, 278–80 (5th Cir. 2022). Our decision resolved all of them as part of factual-basis analysis. *Id.* at 280. We examine whether all of them are properly so considered.

According to one learned authority, the requirement of a factual basis for a guilty plea was added to the Federal Rules of Criminal Procedure in 1966. 1A WRIGHT & LEOPOLD, Federal Practice and Procedure, Criminal § 180 (2023). As quoted already, the requirement is now in Federal Rule of Criminal Procedure 11(b)(3): "Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."

In explaining this new requirement, the 1966 Advisory Committee Notes stated that "[t]he court should satisfy itself, by inquiry of the defendant or the attorney for the government, or by examining the presentence report, or otherwise, that the conduct which the defendant admits constitutes the offense charged" or a lesser included offense. FED. R. CRIM PROC. 11, Advisory Comm. Notes, 1966 Amendment.

The treatise authors state that "the factual basis requirement is similar to the requirement of Rule 11(b)(1)(G), that the court ensure that the

defendant understands the essential elements of the crime charged." WRIGHT & LEOPOLD, § 180. Thus, those authors understand that the factual basis needs to support that the facts, as understood by the defendant, support the elements of the offense.

The government's failure to dispute that Bates may properly raise all three issues — and, more importantly, our court's resolving all of them in *Navarro* as part of the factual basis — means we should resolve them here. It also is arguable, in light of our foregoing review, that all actually are factual-basis questions. In the present case, the elements of the offense include that Bates was previously convicted of a state crime that required him to register as a sex offender under SORNA on the date charged in the indictment. The "factual basis" includes not only that Bates knew he had to register, but "the conduct which the defendant admits constitutes the offense charged." FED. R. CRIM PROC. 11, Advisory Comm. Notes, 1966 Amendment.

The factual basis includes that the defendant's conduct constituted failing to comply with an obligation to register.

We now address the merits of the plain-error arguments.

### III.     *Factual basis to support Bates's guilty plea*

Bates raises three arguments. First, he contends the record does not establish factually that his failure to register was knowing. He is wrong. Bates's factual resume clearly stipulated that he knowingly failed to register as a sex offender. That stipulation provided a sufficient factual basis to allow the district court to find that Bates's failure to register was knowing.

Bates's second argument is that, as a matter of law, he was not obligated to register as a sex offender under Texas law and, therefore, he was not required to register under federal law either. A similar argument was rejected in the precedent on which Bates principally relies. *See Navarro*, 54

F.4th at 274. Whether state law required him to register is irrelevant to whether he had to register under federal law. *Id.*

Bates's third argument is that, as a matter of law, his obligation to register under federal law ended after 15 years. Thus, that obligation had expired by the 2020 date charged in his indictment.

We back up just a bit to add some details about SORNA. It is a crime under federal law to fail to register as a sex offender if: (1) the individual "is required to register under" SORNA; (2) the individual "is a sex offender as defined for the purposes of [SORNA] by reason of conviction under . . . the law of any territory or possession of the United States; or [that] travels in interstate or foreign commerce"; and (3) the failure to register was knowing. 18 U.S.C. § 2250(a). SORNA defines a "sex offender" as "an individual who was convicted of a sex offense." 34 U.S.C. § 20911(1). A state conviction constitutes a "sex offense" if it was "a criminal offense that has an element involving a sexual act or sexual contact with another" or "a criminal offense that is a specified offense against a minor." *Id.* § 20911(5)(A)(i), (ii).

The duration of an individual's obligation to register as a sex offender depends on which of the three SORNA tiers to place the individual's conviction. *Navarro*, 54 F.4th at 278; *see* 34 U.S.C. § 20911. A Tier I offender must register for 15 years; a Tier II offender must register for 25 years; and a Tier III offender must register for life. 34 U.S.C. § 20915(a). Each tier refers to different types of sex offenses under federal law; the tier applies if the prior offense is comparable to, or narrower than, the specified federal offenses. *See* 34 U.S.C. § 20911(3), (4). The Tier III federal crimes are specified in 34 U.S.C. § 20911(4); they include sexual abuse and sexual abuse of a minor in 18 U.S.C. §§ 2241, 2242, 2244.

The "categorical approach" is used to determine the appropriate tier for an individual's state conviction. *Navarro*, 54 F.4th at 278–79. "[T]he specific circumstances of a defendant's crime are irrelevant. All that matters is whether the elements of the state crime match the elements of the federal crime." *Id.* Matching elements requires deciding whether the elements of the state crime of conviction describe a comparable or narrower crime than the federal one. The conclusion needs to be that commission of the state crime necessarily means that the defendant committed the elements of the federal crime. We explain.

"If the state crime sweeps more broadly than the federal offense, it is not comparable and, therefore, cannot be a predicate offense. A crime sweeps more broadly when it criminalizes more conduct than the federal crime would reach by its terms." *Id.* at 279 (quotation marks and citations omitted). If the state law under which the individual was convicted sweeps more broadly than the federal law, the individual will be treated as a Tier I offender who must report as a sex offender for 15 years. *See id.* at 280. If a statute defines multiple offenses by listing elements in the alternative, it is divisible, and this court can use a modified categorical approach and look to certain documents — such as the indictment, jury charge, or plea agreement — to narrow the statute and determine of what crime the defendant was convicted. *Mathis v. United States*, 579 U.S. 500, 505–06 (2016). If, however, the statute lists different factual means of committing the offense, rather than separate offense elements, the modified categorical approach may not be applied. *United States v. Rodriguez-Flores*, 25 F.4th 385, 388 (5th Cir. 2022).

Bates's two predicate offenses include a sexual assault charge and an aggravated sexual assault charge for a child under 14, both in 1988. While the presentence report does not mention them, we are satisfied that the two state statutes under which Bates was charged in 1988 are the 1988 editions of Texas Penal Code § 22.011 (sexual assault) and § 22.021 (aggravated sexual

assault). The language of those statutes corresponds to the description set forth in the presentence report and were cited by the Government as the applicable statutes in the district court, without any objection either in the district court or here by Bates.

The necessary matching can be a difficult task. To assist the court on any issue, an appellant must brief the "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." FED. R. APP. P. 28(a)(8)(A). Bates's opening brief cited only to generally applicable caselaw regarding the categorical approach. His brief never engaged in any analysis of the specific statutes relevant in this case. Indeed, the brief did not even cite the state or federal statutes that the court would have to use as reference points to conduct the categorical analysis. *See Navarro*, 54 F.4th at 278–79. Instead, his brief made a conclusory argument that *Navarro* dictates reversal, despite that *Navarro* analyzed a Colorado statute, not these from Texas. *See id.* In reply to the Government's brief, Bates did not respond to any of the Government's arguments regarding the categorical approach. Rather, Bates disagreed with the Government's assertion that plain error review applies.

We generally confine our analysis to "the issues presented and argued in the brief." *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993). A party who asserts an argument on appeal, but does not brief it adequately, waives that argument. *See United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010). We distinguish the briefing here from that in *Navarro*. There, the defendant presented a categorical approach analysis of the state and federal statutes at issue, explained the SORNA tiers, and outlined the plain error standard.

In exceptional circumstances and particularly in criminal cases, we may *sua sponte* address a plain error even where a party does not raise it on

appeal.  Here, of course, the error was finally raised on the appeal.  We will consider doing so if "plain error is apparent" and not correcting it would seriously affect the fairness, integrity, or public reputation of judicial proceedings.  *United States v. Ortuno*, 952 F.2d 98, 105 (5th Cir. 1992); *see also United States v. Broussard*, 669 F.3d 537, 552–53 & n.10 (5th Cir. 2012).  When we have found there to be an exceptional circumstance, the error has been obvious from on-point precedent.  *See, e.g., Ortuno*, 952 F.2d at 195 (correcting unraised error that was obvious in light of recent decision); *Broussard*, 669 F.3d at 552–53 (reaching unraised error where recent Supreme Court decision rendered error obvious).  We have cautioned, though, that "only the extraordinary case" will excuse the failure to make an argument on appeal.  *Broussard*, 669 F.3d at 553.

Deciding whether this is an exceptional case largely turns on whether any error is actually plain.  *Navarro* discussed that for an error to be so labeled, it must be "clear[,] or obvious, rather than subject to reasonable dispute."  *Navarro*, 54 F4th at 281 (quoting *Puckett*, 556 U.S. at 135).  We find little that is obvious about a possible error in the district court's determination that the elements of the two 1988 Texas statutes of conviction match the comparable Tier III offenses.

The presentence report identified the two convictions and gave the facts of each offense.  Prior to Bates's guilty plea, the Government provided to the court the Texas statutes as they existed at the time of Bates's offenses and sought to have the court take judicial notice of them.  Thus, both the magistrate and district court judges had the agreement by counsel that Bates's offenses were Tier III, which required registration for life.  There was also agreement about the details of each conviction and the statutory language for the state offenses.  We cannot know what either judge did to become satisfied about the requisite factual basis, but all the information was

before both the magistrate judge when taking Bates's plea and the district court judge when accepting the guilty plea and finding Bates guilty.

There was no preserved objection to any of this prior to Bates's opening brief on appeal. Once the sufficiency of the factual basis was contested, the Government's brief responded with a detailed explanation of why these state convictions were for Tier III offenses. We conclude that the application of the categorical approach to these crimes is unclear, and we have nothing from Bates to assist. Any possible error was not plain.

AFFIRMED.

No. 22-40508

Andrew S. Oldham, *Circuit Judge*, dubitante.

The defendant in this case entered an unconditional guilty plea, accompanied by an appeal waiver that plainly bars this appeal. It is unclear to me how an appeal can get over one of these hurdles, let alone both.

"The right to appeal a conviction and sentence is a statutory right, not a constitutional one, and a defendant may waive it as part of a plea agreement." *United States v. Baymon*, 312 F.3d 725, 727 (5th Cir. 2002) (citing *United States v. Dees*, 125 F.3d 261, 269 (5th Cir. 1997)). "We must interpret the plea agreement like a contract, in accord with what the parties intended." *United States v. Bond*, 414 F.3d 542, 545 (5th Cir. 2005); *accord Puckett v. United States*, 556 U.S. 129, 137 (2009). We apply this same contract-law approach to appeal waivers. *See United States v. Palmer*, 456 F.3d 484, 488 (5th Cir. 2006) ("In determining whether a waiver applies, we employ normal principles of contract interpretation." (citing *Bond* and *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005)). That means we enforce "the plain language of the plea agreement." *United States v. Meredith,* 52 F.4th 984, 986 (5th Cir. 2022).

Here, the defendant entered an unconditional guilty plea. *Cf.* Fed. R. Crim. P. 11(a)(2) (authorizing conditional guilty plea, in which defendant can reserve one or more issues for appellate review—a path not taken here). The defendant also signed a plea agreement containing this pellucid appeal waiver:

> **Waiver of Right to Appeal or Otherwise Challenge Sentence**: *Except as otherwise provided in this paragraph, the defendant waives the right to appeal the conviction*, sentence, fine, order of restitution, or order of forfeiture in this case on all grounds. *The defendant further agrees not to contest the conviction*, sentence, fine, order of restitution, or order of

> forfeiture in any post-conviction proceeding, including, but not
> limited to, a proceeding under 28 U.S.C. § 2255.

ROA.606 (emphasis added). I do not understand what those words could possibly mean except that the defendant has agreed not to contest his conviction in our court. It is uncontested that Bates knowingly and intelligently signed that waiver. It is uncontested that he had the assistance of able and effective counsel in doing so. It is also uncontested that none of the appeal waiver's exceptions (for, e.g., an ineffective assistance of counsel claim) applies. Therefore, I would enforce the waiver.

As the per curiam opinion notes, however, our court has held that appeal waivers do not prohibit defendants from challenging on appeal the factual bases for their plea agreements. *See* Fed. R. Crim. P. 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."). If that is confusing, it should be. In the factual basis, the defendant admits that he did X and Y in violation of Z federal criminal statute. If the plea agreement and appeal waiver bar nothing else, they must bar a defendant from turning around and saying, "I didn't really violate Z."

So where did we invent the waivers-don't-waive rule? The culprit appears to be *Baymon*. There, in dicta, we pointed to three cases that did *not* involve unconditional appeal waivers. And we reasoned as follows:

> Although *Spruill*, *White*, and *Johnson* are not directly applicable to this case because in those cases either the bill of information failed to allege a factual element of the crime, or the defendant brought a motion to dismiss before pleading guilty, or the plea agreements were conditional, the Court in those cases allowed the defendants to appeal issues which by the terms of the parties' plea agreements were waived.

Accordingly, Baymon is challenging the sufficiency of the factual basis for his plea, and we can review despite the waiver.

*Baymon*, 312 F.3d at 727–28 (citing *United States v. Spruill*, 292 F.3d 207, 214–15 (5th Cir. 2002); *United States v. White*, 258 F.3d 374, 380, 384 (5th Cir. 2001); *United States v. Johnson*, 194 F.3d 657, 659, 662 (5th Cir. 1999), *vacated and remanded*, 530 U.S. 1201 (2000), *opinion reinstated with modification*, 246 F.3d 749 (5th Cir. 2001)). That analysis is head-scratching at best. It is akin to saying "*Case A*, *Case B*, and *Case C* are not directly applicable to this case because none of them presented the same legal issue or the same facts. But the plaintiff won in all three, so the plaintiff wins here." And if *Baymon*'s non sequitur was not enough, the panel then held its dicta was irrelevant because Baymon lost in any event. *See* 312 F.3d at 728–30 (affirming conviction). Still, later panels have seized on *Baymon*'s illogical dicta as if it were controlling and then used it to ensconce our waivers-don't-waive rule firmly in Fifth Circuit precedent. *See, e.g.*, *United States v. Ortiz*, 927 F.3d 868, 873 (5th Cir. 2019) (pointing to *Baymon* as the original source of our waivers-don't-waive rule); *ante*, at 3 (relying on *Ortiz*).

Our waivers-don't-waive rule is particularly puzzling when viewed in historical context. At the zenith of federal judges' power over criminal proceedings, the Warren Court created the so-called "deliberate bypass" rule in *Fay v. Noia*, 372 U.S. 391 (1963). That rule allowed federal judges to review state prisoners' habeas claims—even defaulted ones—so long as the state prisoner did not deliberately bypass the State's criminal justice system. *See id.* at 438. In announcing that sweeping rule, the Court pointed to appeal waivers:

> If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the

state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. . . . [A] state court's finding of waiver [does not] bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question.

*Id.* at 439. The deliberate bypass rule had predictably deleterious effects on federalism, finality, and the rule of law—which led the Court to overrule it not once but twice. *See Wainwright v. Sykes*, 433 U.S. 72, 87–90 (1977); *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991). The important point for present purposes, however, is that *even under Fay v. Noia*, a defendant's knowing and voluntary decision to waive his appellate rights barred relief. It is surpassingly strange that our waivers-don't-waive rule is somehow less protective of criminal judgments than the deliberate bypass rule twice rejected by the Supreme Court after *Fay*.

The majority nonetheless contends that, "error or not," the waivers-don't-waive rule is the law of this circuit. *Slip op.* at 3. But even if that is so, it is not clear to me that a defendant who enters an unconditional guilty plea can turn around and appeal the factual basis of his conviction *irrespective* of the appeal waiver. After all, when pleading guilty, "a criminal defendant [] solemnly admit[s] in open court that he is in fact guilty" and afterward, he "may attack *only* the voluntary and intelligent character of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (emphasis added). That is

because "a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case." *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975) (per curiam).

Challenging the factual basis of an agreement after both an unconditional plea *and* a waiver seems a bridge or two too far. It is unclear to me how we can look past these problems to consider the merits of defendant's appeal.